OPINION
{¶ 1} Plaintiffs-appellants, Matthew D. Montoney ("Mr. Montoney") and Jeanette I. Montoney (collectively "appellants"), appeal from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Lincoln Logs, Ltd. ("Lincoln Logs"), on appellants' claims for violation of the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. ("CSPA"). Because we conclude that appellants' CSPA claims are time-barred by the statute of limitations set forth in R.C. 1345.10(C), we affirm.
 {¶ 2} On September 3, 2004, appellants filed a verified complaint alleging claims against defendants Lincoln Logs, Ltd., Lincoln Logs, The Original Lincoln Logs LTD, Fisher Construction Repair, Donald G. Fisher, Eric S. Fisher, Mary Ann Tennant, Rick Tennant, and various John Does. In their complaint, appellants alleged claims for: violation of the CSPA; violation of the Ohio Home Solicitation Sales Act, R.C.1345.21 et seq.; breach of contract; fraudulent inducement; negligent supervision; and negligent misrepresentation. On June 8, 2005, appellants filed a First Amended and Supplemental Verified Complaint, naming The Cincinnati Insurance Company as an additional defendant.
 {¶ 3} On October 27, 2005, appellants moved the trial court for partial summary judgment, and Lincoln Logs moved the trial court for summary judgment on all of appellants' claims.[1] In pertinent part, Lincoln Logs argued that the two-year statute of limitations contained in R.C. 1345.10(C) barred appellants' CSPA claims. On December 16, 2005, the trial court issued a decision granting Lincoln Logs' motion for summary judgment as to most of appellants' claims, including appellants' CSPA claims. On December 27, 2005, the trial court journalized its December 16, 2005 decision. Subsequently, Lincoln Logs filed a supplemental motion for summary judgment regarding appellants' remaining claims, and the trial court granted that motion on February 14, 2006. The trial court journalized its February 14, 2006 judgment on February 23, 2006. Appellants voluntarily dismissed their claims against the other defendants on March 22, 2006, rendering the trial court's February 23, 2006 judgment entry final and appealable, and appellants filed a timely notice of appeal, relating solely to their claims against Lincoln Logs for violation of the CSPA.
 {¶ 4} The facts underlying this case are generally undisputed. While searching for a log home supplier, appellants attended a log home trade show in Cincinnati, Ohio, in or about September 2001, where they met Lincoln Logs dealers Mary Ann and Rick Tennant. Lincoln Logs is a New York corporation that sells construction materials used to build log homes. Appellants had previously seen a Lincoln Logs advertisement, which stated, in part:
 Service. Building a new home is more than just selecting a design. Your Lincoln Logs dealer is trained to help you with all the other important parts of your building project. From working with you to find the best financing package through helping you select a builder, your Lincoln Logs representative will be there at every step to answer your questions and to give you the service and support you need.
Appellants had seen similar representations on the Lincoln Logs website. Shortly after the trade show, Mary Ann Tennant contacted appellants, and appellants visited the Tennants' Lincoln Logs home.
 {¶ 5} Prior to visiting the Tennants' home, appellants had unsuccessfully attempted to find a contractor interested in building a log home. According to Mr. Montoney, the Tennants represented that they could help appellants find a builder. According to Mr. Montoney, "the gist of the whole thing was Lincoln Logs had a list of contractors and in order to be on this list of contractors they had very strict guidelines that they had to use for these people to be allowed to be on the list to be recommended[.]" (Montoney Depo. "Depo." at 25.) Appellants ultimately selected Lincoln Logs as their log home supplier, based in part on the representations in the Lincoln Logs advertisement and on the Tennants' representations that they could help appellants find a builder.
 {¶ 6} After appellants selected Lincoln Logs as their log home supplier, the Tennants recommended contractor Craig Case to do the driveway and excavation work for appellants' new home, Forrest Pae General Contractors ("Forrest Pae") to do the concrete work, including the poured basement walls, for appellants' new home, and Fisher Construction Repair ("Fisher") to build the log home. With respect to Fisher, Mr. Montoney testified:
 We were told that they had found a contractor that would be willing to build the house for us, had experience building [log] homes, was on their list of approved people and that since they had not — we were told that they had worked on log homes but had not worked on a Lincoln Logs home before and, therefore, they would be providing guidance to them through the building steps until they got the hang of the process used by Lincoln Logs.
(Depo. at 36.) Mr. Montoney later admitted that he assumed Fisher was on the list of approved contractors because the Tennants recommended Fisher, but he did not recall any particular statement to that effect. Appellants conducted no independent investigation of any of the contractors that the Tennants recommended and that appellants contracted with for work on their log home.
 {¶ 7} On November 14, 2001, the Tennants and Don and Eric Fisher met with appellants at appellants' home, and appellants signed a Sales Agreement for the purchase of their Lincoln Logs home package as well as a contract with Fisher. Because the Fisher contract was "pretty straight forward" and because appellants had already seen a draft copy of the contract and had discussed the price with Fisher, appellants had no questions or discussions with Fisher about the contract's content. (Depo. at 47.) On a later date, as required by their mortgage company, appellants revised their contract with Fisher and incorporated previously executed contracts with Craig Case and Forrest Pae into the Fisher contract so that Fisher "became the general contractor overseeing all the other contractors we had already made contracts with." (Depo. at 31.)
 {¶ 8} On November 14, 2001, appellants spent time with the Tennants going over the Sales Agreement before signing it. The Sales Agreement was a two-sided document printed on a multi-part form. Appellants had the opportunity to review the complete Sales Agreement before signing it and did, in fact, read the Sales Agreement at that time. The Sales Agreement contains the following acknowledgment:
 Purchase[r] acknowledges that he has read and understands all terms and conditions contained on both sides of this Agreement. This Agreement and all attached riders and addenda constitute the entire understanding between Lincoln Logs Ltd. and the Purchaser and supersedes all prior negotiations and understandings, verbal or written. * * *
The back of the Sales Agreement contains Additional Terms and Conditions, including, in bold print:
 The authorized Lincoln Logs dealer who brought about this sale is an independent representative of Lincoln Logs and not Lincoln Logs' employee or agent. This agreement is between the purchaser and Lincoln Logs, not Lincoln Logs' representative. Any contractual or other arrangements the purchaser may make with the representative are not subject to Lincoln Logs' supervision or control and Lincoln Logs is not responsible for the actions or conduct of the representative in those contractual or other arrangements. Lincoln Logs in no way endorses or recommends the services of the authorized Lincoln Logs representative as a builder or the services of any builder. The purchaser agrees not to assert a claim against Lincoln Logs arising from the representatives of any other builders rendering of any construction, contracting or other services.
(Emphasis sic.) After appellants signed the Sales Agreement, one or both of the Tennants made a photocopy of the front, but not the back, of the Sales Agreement for appellants.
 {¶ 9} The Tennants did not sign the Sales Agreement on behalf of Lincoln Logs on November 14, 2001. Rather, the Tennants delivered the Sales Agreement, along with appellants' deposit of $7,698, to Lincoln Logs' offices in New York for an authorized signature. Appellants received a complete copy of the Sales Agreement after its execution by Lincoln Logs.
 {¶ 10} When appellants received the final Sales Agreement from Lincoln Logs, they also received a document from Lincoln Logs entitled "Notice," which provided, in part:
 You, the Homeowner, are responsible for selecting the contractor(s) to erect your Lincoln Logs package. Your Salesperson / Dealer may have a list of available contractors that are familiar with the construction techniques for our products, but this is in no way to be construed as an endorsement or recommendation of any particular contractor. * * *
The "Notice" concerned Mr. Montoney because he viewed it as contradicting the Tennants' promises "[t]hat they would help us provide — they would provide a decent contractor or reputable contractors and now it's saying that they're not responsible for doing that." (Depo. at 175-176.)
 {¶ 11} Appellants also received a letter from Lincoln Logs, dated November 27, 2001. The letter, signed by Lincoln Logs Customer Service/Contract Administration Representative, Patti Bullock, stated, in part:
 Rick Mary Ann Tennant will be maintaining constant contact to assist you in any way necessary in planning your project. Design, financing, permitting, and contractor services are some of the areas in which we are prepared to work with you. Our representatives are backed by the best design and engineering staff in the business, as well as people with years of experience in all phases of the building industry. Their efforts, on your behalf, will be coordinated by our customer service department. As we move forward toward the goal of delivering your Lincoln Logs home, your sales representative and I will work with you to any extent necessary to make your project a success.
 * * *
 The important thing to remember is that you did not just buy a log home package, you bought a company. Call your sales representative at their place of business, or me at 1-800-833-2461, if you need any help at all. If we can't help you, we'll put you in touch with the Lincoln Logs associate that will.
Enclosed with Ms. Bullock's letter was a copy of the Lincoln Logs Customer Service Manual and Construction Manual.
 {¶ 12} Concerns regarding Fisher arose almost immediately. Sometime after appellants received their completed paperwork from Lincoln Logs, but prior to the start of construction, Mr. Montoney learned that Fisher was not a licensed contractor in Franklin County, despite the Tennants' prior representations to the contrary. Consequently, Fisher was unable to obtain required construction permits. Instead, Mr. Montoney personally obtained each of the required permits, with the exception of the plumbing permit, which required a licensed plumber. Mr. Montoney also became aware almost immediately that Fisher was having problems with money when Fisher bounced a check to the plumber he obtained to sign the plumbing permit and did not have funds to cover necessary supplies.
 {¶ 13} With his knowledge of Fisher's money problems, Mr. Montoney began depositing draw money from appellants' construction loan into his own account and writing Fisher checks as needed. Mr. Montoney also personally paid for various construction materials and supplies as a result of Fisher's money problems:
 So at that point I was pretty much making all the payments. The equipment, the lumber and the I-beams and that sort of thing to cap the foundation when the second set of walls were done, that sort of thing, I ended up having to pay for that because money that was supposed to have come from the initial draw check was, I don't know, gone and I ended up paying for that out of my own pocket, not from the construction loan.
(Depo. at 71.) Eventually, Mr. Montoney became aware that Fisher was not paying his workers.
 {¶ 14} Within the first month of the actual assembly of appellants' log home, appellants noticed problems with Fisher's work, problems Mr. Montoney communicated to the Tennants and to Dave Patton at Lincoln Logs' New York offices. Mr. Montoney believed that the Tennants were supposed to be supervising Fisher's assembly of the home "to make sure that the Fisher crew knew how to do the work[.]" (Depo. at 117.) Mr. Montoney stated that the Tennants, in fact, were conducting "on-site supervision of the Fisher crew[.]" (Depo. at 112.) However, Mr. Montoney testified that "there were some things that were going on that [the Tennants] weren't happy with[,] * * * some corners weren't being put together well or they were trying to shortcut things." (Depo. at 113.) Mr. Montoney stated that "there were some concerns about things that [Fisher was] doing, they weren't following instructions well and they weren't putting things together well." (Depo. at 112.) Specifically, appellants noted problems with the way the logs had gone together and with corners that were not square. Mr. Montoney recalled having three or four conversations with Patton and testified: "At one point [Patton] said you've been calling with so many problems we'regoing to have to start charging you for advice and it's time for you to think about getting another contractor." (Depo. at 118.) By that time, Mr. Montoney was becoming increasingly concerned and had already thought about terminating Fisher.
 {¶ 15} Mr. Montoney recalls "quite a few conversations" about whether or not Fisher was going to be able to properly finish construction of appellants' log home. (Depo. at 117.) Appellants allege that Fisher ceased work on the log home on or about September 14, 2001. According to Mr. Montoney, Fisher "quit before I had a chance to fire him." (Depo. at 129.)
 {¶ 16} After Fisher ceased work on appellants' log home, the Tennants informed appellants that contractor Ed Hays ("Hays") "was interested in doing Lincoln Logs homes and would probably be interested in taking over the job and finishing up." (Depo. at 138.) After meeting with him, appellants contracted with Hays to repair work originally completed by Fisher and to finish construction of their log home.[2] Mr. Tennant helped Hays complete appellants' log home as Hays' employee. Appellants were happy with Hays' work and moved into their log home in February 2003.
 {¶ 17} In their complaint, appellants alleged that Lincoln Logs violated the CSPA by committing unfair, deceptive, and/or unconscionable acts in connection with a consumer transaction, as prohibited by R.C.1345.02(A) and/or 1345.03(A). Specifically, in their complaint, appellants alleged that the following conduct constituted unfair, deceptive, and/or unconscionable acts: (1) Lincoln Logs' failure to provide appellants with a dated receipt for their deposit; (2) Lincoln Logs' representations in advertisements and on its website; (3) Lincoln Logs' alleged failure to register to do business in Ohio and/or failure to register its trade and/or fictitious name with the Ohio Secretary of State. Appellants also alleged that Lincoln Logs committed deceptive acts by failing to provide notice to appellants of their right to cancel the sale, in accordance with R.C. 1345.22, and by failing to provide appellants with a written agreement or offer, including written notification of their right to cancel, as required by R.C. 1345.23. Lastly, appellants alleged that the Tennants assured appellants that they would use their training and expertise to ensure that Fisher was properly trained and guided in the construction of appellants' home, but that the Tennants and/or Lincoln Logs failed to properly supervise construction.
 {¶ 18} In its motion for summary judgment, Lincoln Logs argued, in part, that the two-year statute of limitations for CSPA claims set forth in R.C. 1345.10(C) barred appellants' CSPA claims. In response, appellants argued that their central allegation against Lincoln Logs was that Lincoln Logs and its agents failed to adequately supervise Fisher's construction of appellants' log home and that the resulting CSPA violation was continuous and ongoing. Accordingly, appellants contended that their CSPA claims were timely filed.
 {¶ 19} The trial court concluded that appellants' CSPA claims accrued more than two years prior to appellants filing their complaint and that the R.C. 1345.10(C) statute of limitations barred such claims. The trial court found that any CSPA violation based on Lincoln Logs' failure to register with the Secretary of State, failure to provide appellants with a complete copy of the contract, failure to provide written notice of appellants' right to cancel the contract, and failure to provide a written receipt for appellants' deposit occurred in November 2001, more than two years before appellants filed their complaint. The trial court also concluded that any CSPA violation based on representations that Lincoln Logs and its agents would supervise and train Fisher accrued as of the date Lincoln Logs executed the Sales Agreement in November 2001, more than two years before appellants filed their complaint. Therefore, the trial court found that Lincoln Logs was entitled to summary judgment on appellants' untimely CSPA claims.
 {¶ 20} In their single assignment of error, appellants assert that "[t]he trial court erred in granting [Lincoln Logs] summary judgment on Appellants' CSPA claim." Appellants' arguments on appeal center solely on its allegations that Lincoln Logs violated the CSPA by failing to provide services in accordance with alleged representations that it would supervise and train Fisher in the construction of appellants' log home.
 {¶ 21} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp.v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 22} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 23} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,358-359.
 {¶ 24} The Ohio Supreme Court has explained that the CSPA:
 * * * [P]rohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03. In general, the CSPA defines "unfair or deceptive consumer sales practices" as those that mislead consumers about the nature of the product they are receiving, while "unconscionable acts or practices" relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue. * * *
Johnson v. Microsoft Corp., 106 Ohio St.3d 278, 2005-Ohio-4985, at ¶ 24. The CSPA is a remedial law and, as such, must be liberally construed. Whitaker v. M.T. Automotive, Inc., 111 Ohio St.3d 177,2006-Ohio-5481, at ¶ 11, citing Einhorn v. Ford Motor Co. (1990),48 Ohio St.3d 27, 29.
 {¶ 25} A deceptive, unfair or unconscionable act or practice is a violation of the CSPA whether it occurs before, during or after the underlying consumer transaction. See R.C. 1345.02(A) and 1345.03(A). R.C. 1345.02(B) enumerates, without limitation, certain specific deceptive acts or practices. In pertinent part, R.C. 1345.02(B) provides that:
 * * * [T]he act or practice of a supplier in representing any of the following is deceptive:
 * * *
 (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
 * * *
 (5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not * * *[.]
Appellants argue that Lincoln Logs' failure to provide services in accordance with prior representations constitutes a violation of the CSPA.
 {¶ 26} Pursuant to R.C. 1345.10(C), "[a]n action under sections1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit[.]" Thus, the statute of limitations commences to run from the date of the occurrence of the violation, which is not necessarily the date of any underlying transaction. Luft v. Perry Cty. Lumber Supply Co., Franklin App. No. 02AP-559, 2003-Ohio-2305, at ¶ 27. Rather, the General Assembly explicitly recognized that a CSPA violation may occur before, during or after the underlying consumer transaction. R.C. 1345.02(A) and1345.03(A). No discovery rule applies to claims for damages under the CSPA; "R.C. 1345.10(C) sets forth an absolute two-year statute of limitations for such damage actions." Luft at ¶ 25, citing Cypher v.Bill Swad Leasing Co. (1987), 36 Ohio App.3d 200, 202.
 {¶ 27} In granting summary judgment in favor of Lincoln Logs, the trial court concluded that appellants' CSPA claims accrued more than two years before appellants filed their complaint and that R.C. 1345.10(C) consequently barred such claims. The sole issue before us on appeal is when appellants' CSPA claims accrued and, consequently, when the two-year limitations period began to run. Appellants filed their complaint on September 3, 2004. Accordingly, to be timely, appellants' CSPA claims must be premised on violations, i.e., deceptive, unfair or unconscionable acts or practices, that occurred after September 3, 2002.
 {¶ 28} Lincoln Logs argues that any representation upon which appellants could base a CSPA claim occurred on or before November 14, 2001, when appellants signed their contract with Fisher and their Sales Agreement with Lincoln Logs. Appellants, on the other hand, argue that "[b]y representing that Lincoln Logs would supervise Fisher's construction of the log home and then failing to do so, Lincoln Logs violated the CSPA, and this violation continued so long as Lincoln Logs failed to perform in accordance with its prior representations." Appellants contend that Lincoln Logs' representations, through the Tennants, that they would train Fisher and supervise Fisher's construction of appellants' log home and Lincoln Logs' failure to act in conformance with such representations, are part of a continuing CSPA violation. Therefore, appellants assert that the limitations period did not begin to run until Fisher ceased work on appellants' log home on September 14, 2002, less than two years before appellants filed their complaint.
 {¶ 29} In support of their position that the evidence demonstrates a continuing CSPA violation and that their claims were timely, appellants rely on this court's opinion in Roelle v. Orkin Exterminating Co.,Inc. (Nov. 7, 2000), Franklin App. No. 00AP-14. In Roelle, the plaintiffs owned and occupied a single family residence in Columbus, Ohio, and were assignees of the prior owners' rights under a Limited Lifetime Renewable Termite Retreatment Guarantee (the "Guarantee") issued by Orkin Exterminating Company, Inc. ("Orkin") upon Orkin's treatment of the residence for termites in 1988. Each year thereafter, the prior owners and then the plaintiffs paid Orkin an annual fee to renew the Guarantee. After the initial termite treatment, the prior owners called Orkin for retreatment on six occasions between 1991 and 1993. After purchasing the home, the plaintiffs called Orkin to the home 24 times between 1994 and 1999, resulting in an additional 14 treatments. The plaintiffs subsequently filed a complaint alleging, inter alia, violation of the CSPA. In part, the plaintiffs claimed that the Guarantee was illusory and constituted a deceptive and unconscionable practice under the CSPA.
 {¶ 30} The trial court granted summary judgment in favor of the plaintiffs on their claim that the Guarantee constituted an unfair or deceptive practice, based on the Guarantee's limitation of Orkin's liability toretreatment and release of Orkin from liability for structural damage caused by reinfestation. On appeal, we noted the Second Appellate District's previous holding that a pest control retreatment warranty similar to Orkin's "was inherently deceptive, because although the agreement styled itself a `guarantee,' any assurance or warranty of value to the consumer was entirely negated by the subsequent exclusion from liability, so that the exception entirely consumed the initial premise[.]" Id., citing State ex rel. Celebrezze v.Ferraro (1989), 63 Ohio App.3d 168, 171. Like the Second District, we concluded that the Guarantee constituted a deceptive act or practice under R.C. 1345.02(B)(10), which classifies as deceptive the "act or practice of a supplier in representing * * * [t]hat a consumer transaction involves * * * a warranty * * * if the representation is false." Moreover, we agreed with the trial court's conclusion that, because the Guaranteeconstituted a deceptive act or practice under the CSPA, the Guarantee's limitation of remedy to retreatment should not be given effect.
 {¶ 31} On appeal, Orkin argued that, regardless of the merits, the two-year statute of limitations barred the plaintiffs' CSPA claim. We disagreed, stating:
 * * * The annual renewals entered into by the parties between 1994 and 1999 constituted a continuing contract, and for statute of limitations purposes the action accrued, and statute began to run, only upon termination of the final renewal. See, generally, Weber v. Billman (1956), 165 Ohio St. 431. More appositely, in the case of remedial legislation such as the CSPA, the term "occurrence of the violation," where the violation is a continuing or episodic one, will denote the time when the violation ceases. RY/EH, Inc. v. Arthur Treacher's, Inc. (1996), 115 Ohio App.3d 332
(construing the same phrase "occurrence of the violation" in R.C. 1334.10, providing remedy for victims of deceptive or negligent franchising practices). Statutes of limitation generally are to be construed liberally to permit the decision of cases upon their merits. Gregory v. Flowers (1972), 32 Ohio St.2d 48. The restrictive reading of R.C. 1345.02 Orkin would have us adopt in the present case essentially guts the statute with respect to continuing transactions, which are common in consumer sales and thus the intended object of the legislation. We therefore find that the Roelles' CSPA action is not barred by the statute of limitations.
Roelle. Relying on Roelle, appellants argue that the statute of limitations on their CSPA claims did not begin to run until Fisher quit working on appellants' log home.
 {¶ 32} On the other hand, in support of its position that the statute of limitations on appellants' CSPA claims began to run at the time of the alleged representations underlying such claims, Lincoln Logs relies on another case from this court. Lincoln Logs argues that, under this court's reasoning in Luft, appellants' claims are time-barred.
 {¶ 33} In Luft, the plaintiff ("Luft") had a barn, walkway, and garage constructed on his property in February 1989 and, within a few months, noticed discoloration in a small area of the barn. In June 1989, representatives from the construction company, the company that pre-stained the wood used in the construction, and the paint supplier assured Luft that the problem would be taken care of by painting over the pre-stained wood with Olympic latex paint, which was guaranteed for 15 years. In July 1989, Luft accordingly hired painters to repaint the structures using Olympic latex paint supplied by the original paint supplier. Around Labor Day 1992, Luft noticed a problem with the Olympic paint applied in July 1989. When Luft called his construction company to complain, the construction company did not return his call. However, Luft did complain to PPG, the manufacturer of Olympic paint, and had discussions and meetings with PPG representatives as late as May 1998. On April 29, 1999, Luft brought suit against PPG, the construction company, the company that pre-stained the wood, the paint supplier, and the painters, alleging, among other claims, violations of the CSPA. The trial court entered summary judgment in favor of all defendants other than PPG on Luft's CSPA claims. On Luft's CSPA claim against PPG, a jury returned a verdict in favor of Luft.
 {¶ 34} Luft appealed the trial court's conclusion that the statute of limitations barred his CSPA claims against the non-PPG defendants, contending, in reliance on Roelle, that the actions of the non-PPG defendants were part of a continuing transaction. While not expressly rejecting Roelle, we held that, "even if each CSPA violation was merely a part of a continuing transaction, Luft's CSPA claims against [the non-PPG defendants] were still barred by the statute of limitations."Luft at ¶ 76. Luft's claims against the company that pre-stained the wood were time-barred because Luft admitted that the last time that company made any representation that it would fix the paint job was in 1989, over 12 years before Luft filed his complaint. This court stated "a claim under the CSPA should have been brought against [the pre-stain company] by July 1991[,]" two years after the company's last representation that it would remedy the paint job. Id. at ¶ 77. Similarly, with respect to Luft's CSPA claims against the paint supplier and the construction company and its owners, we stated "there is simply no action or contact between [those defendants] and Luft within two years of the filing of the complaint that could form the basis of a CSPA claim." Id. at ¶ 80. The last contact between Luft and the paint supplier occurred in the summer of 1989, and the last contact between Luft and the construction company or its owners occurred in 1993. Accordingly, we affirmed the trial court's entry of summary judgment in favor of the non-PPG defendants. Thus, Luft suggests that, even in the case of a continuing transaction, there must be some violative conduct by the defendant within the two-year period prior to a plaintiff's filing of a CSPA claim.
 {¶ 35} In addition to addressing Luft's CSPA claims against the non-PPG defendants, this court addressed Luft's CSPA claim against PPG, on which the jury returned a verdict in favor of Luft. After trial, PPG moved for judgment notwithstanding the verdict ("JNOV"), arguing that Luft's CSPA claim was time-barred, and the trial court denied PPG's motion. Our assessment of the trial court's denial of PPG's motion for JNOV involved review of the jury interrogatories. Upon review, we concluded that the jury's interrogatory responses did not specify the dates of the CSPA violations found by the jury and did not necessarily preclude a finding that the CSPA violations occurred within two years before Luft filed his complaint. In making such a determination, we again focused on the timing of the alleged misleading statements underlying Luft's claim. Although the jury found that PPG knowingly made a misleading statement of opinion to Luft upon which Luft was likely to rely to his detriment, in violation of R.C. 1345.03(B)(6), we stated:
 * * * The jury made no finding as to the date the misleading statement(s) was made by PPG in this interrogatory or any other. Any statement must have been made on or after April 27, 1997, in order to be within the statute of limitations period. Indeed, Luft alleged statements by PPG and its representative were made to him after this date. * * *
Luft at ¶ 29. Thus, this court again focused on the date of the defendant's misleading statement or misrepresentation in evaluating the accrual of a CSPA claim.
 {¶ 36} Appellants urge this court to conclude that the alleged representations by the Tennants and/or Lincoln Logs, coupled with Lincoln Logs' alleged failure to perform in accordance with such representations, constitute a continuing violation like that inRoelle. To the contrary, Lincoln Logs urges this court to followLuft and to focus on the date of the alleged underlying representations to determine the accrual date of appellants' CSPA claims. While we find neither Roelle nor Luft directly on point or dispositive of this appeal, we conclude that the lack of evidence of conduct constituting an unfair, deceptive or unconscionable act by Lincoln Logs during the two-year period preceding appellants filing their complaint warranted summary judgment in favor of Lincoln Logs on appellants' CSPA claim against Lincoln Logs.
 {¶ 37} Roelle, as well as the other cases appellants cite in support of their continuing violation theory, involved conduct by the defendant that could be construed as a deceptive act or practice, within the applicable limitations period. For example, in Roelle, Orkin renewed its deceptive Guarantee for an additional one-year period within the same year the plaintiffs filed their complaint. In Sautter v. OrkinExterminating Co., Inc. (N.D.Ohio 2001), Case No. 3:00CV-7338, the court reviewed the same guarantee at issue in Roelle and concluded that the renewal payments, in effect, created new, but identical, contracts and constituted equally actionable consumer transactions. The court stated that, "[w]hen defendant offered to renew plaintiff's coverage for a fee, it was offering the same coverage outlined in the original contract." Id. Thus, the court found that the plaintiff's commencement of a CSPA action within two years of her last renewal payment was timely.
 {¶ 38} In Keiber v. Spicer Constr. Co. (May 28, 1999), Greene App. No. 98CA23, the Second Appellate District concluded that a CSPA claim was not time-barred because the evidence demonstrated that the defendant, who entered into a contract with the plaintiff for the purchase of property and construction of a new home, continued to represent that it would fix items that needed repair after the real estate transfer closed and within two years prior to the plaintiff filing a complaint. The court stated that, "[t]hese continued representations that Spicer Construction would fix the items that needed repair constitute `an unfair or deceptive act or practice' after the transaction." Similarly, in Hofstetter v. Fletcher (C.A.6, 1988), 905 F.2d 897, the Sixth Circuit Court of Appeals concluded that a plaintiff's CSPA claims were not barred because the evidence established that the defendants continued to provide the plaintiff with services and assurances, which themselves constituted deceptive or unconscionable acts, within two years prior to the plaintiff filing her complaint. Each of the above cases, includingRoelle, involved more than a continuing relationship, contractual or otherwise, between the plaintiff and the defendant. Rather, each case included evidence of conduct constituting deceptive or unconscionable acts occurring within the two-year period culminating in the filing of the complaint.
 {¶ 39} In Luft, this court recognized the need for conduct by the defendant within the limitations period. There, we stated that, even if the CSPA violations of the non-PPG defendants were part of a continuing transaction, the statute of limitations barred Luft's claims against the non-PPG defendants because the violations occurred more than two years prior to Luft filing his complaint. We equated the occurrence of the violation with the specific act or representation of each defendant, despite Luft's contention that the actions of the non-PPG defendants were part of a continuing transaction, on which the statute of limitations did not begin to run until the final transaction was complete. For example, with respect to the pre-staining company, we looked to the date of the company's last representation that it would fix the paint job and not to the date the company failed to comply with that representation.
 {¶ 40} In this case, the alleged misrepresentations occurred more than two years prior to appellants filing their complaint. The alleged misrepresentations in Lincoln Logs' advertisements and website were made prior to appellants entering into a contract with Lincoln Logs in November 2001. Similarly, the Tennants' representations that Lincoln Logs maintained a list of competent and reputable contractors and that they would ensure that the contractor was properly trained and supervised were made prior to appellants contracting with Lincoln Logs and Fisher in November 2001. Such representations form the basis of appellants' CSPA claims under R.C. 1345.02(B)(2) and (B)(5), both of which focus on the representation as an unfair or deceptive practice. Even assuming the record here contains evidence of deceptive, unfair or unconscionable acts during the construction process, the record contains no evidence of any deceptive, unfair or unconscionable act or practice by Lincoln Logs, either directly or via the Tennants, within the two years prior to appellants filing their complaint, that is, after September 3, 2002.
 {¶ 41} We reject appellants' argument that, as long as Lincoln Logs failed to act in accordance with its alleged representations, the statute of limitations did not begin to run. In Luft, this court responded to Luft's argument that the defendants were estopped from asserting the statute of limitations as a defense, stating:
 * * * If a business's statement that it would try to remedy a complaint tolled the statute of limitations, the statute of limitations for countless actions between consumer and business could be tolled indefinitely. In the present case, the businesses did not remedy the problem in a timely manner and to Luft's satisfaction, and nothing prevented Luft from filing his causes of action within the statutorily prescribed limits. * * *
Luft at ¶ 75. Although we made that statement in Luft in response to an equitable estoppel argument, the reasoning equally applies here. Like inLuft, we conclude that, in the absence of evidence of any conduct constituting a deceptive, unfair or unconscionable act by the defendant within the two years preceding appellants filing their CSPA claims, appellants' claims are time-barred.
 {¶ 42} Upon review, we conclude that the trial court did not err in granting summary judgment in favor of Lincoln Logs on appellants' CSPA claims. Therefore, we overrule appellants' single assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE and BROWN, JJ., concur.
[1] Lincoln Logs, Ltd. asserts that Lincoln Logs and The Original Lincoln Logs LTD are fictitious names under which it does business. Accordingly, the motion for summary judgment in the trial court and appellee's brief here were filed only in the name of Lincoln Logs, Ltd.
[2] Because of the limited construction funds remaining when appellants contracted with Hays, appellants opted to complete certain tasks that had been included in Fisher's contract themselves, rather than incorporating those tasks into Hays' contract.