OPINION
{¶ 1} Defendant-appellant, Clint A. Warner dba Quality Irrigation Systems ("Warner"), appeals from the judgment of the Franklin County Municipal Court in favor of plaintiff-appellee, Jeanne C. Grothaus ("Grothaus"), on her claims for breach of contract, breach of warranties, and unjust enrichment. Grothaus cross-appeals from the trial court's dismissal of her claim under the Consumer Sales Practices Act ("CSPA"). *Page 2 
 {¶ 2} The facts underlying this matter are straight-forward and undisputed. In the spring of 2001, Grothaus and her fiancé, Ken Curtin ("Curtin"), [1] inquired about Warner installing an irrigation system at Grothaus and Curtin's residence (the "property"). At the time, Curtin was the titled owner of the property, and Grothaus held a mortgage for an undisclosed amount on the property based on a loan she made to Curtin. Warner met with Grothaus and Curtin, walked the property, and made a pencil drawing of a proposed irrigation system that would water all areas of the property visible from the street. Warner drafted a written proposal, addressed solely to Curtin. The proposal set forth three prices for the system, based on different coverage areas. It contained the following limited warranty:
 Quality Irrigation warrants that the system will be installed properly and will function satisfactorily. The time of this warranty will be for one (1) year from the date of installation. Not covered in this warranty, damage as a result of new landscaping, new utilities, additions to home or additions to the irrigation system by another company.
 {¶ 3} Grothaus was involved in discussions with Warner both before and after installation of the irrigation system. Grothaus and Curtin decided to proceed with Warner's proposal for an irrigation system to cover the front and side yards for a cost of $4,150. They made a down payment of approximately $2,000.
 {¶ 4} From the day of its installation in the summer of 2001, the irrigation system did not function as anticipated. Warner admitted that, when he first turned the system on after installation, "it didn't work, it didn't perform as well as I thought it was going to work." (Tr. at 129.) Although water came out of the sprinkler heads, it did not *Page 3 
cover the entire area. Warner, therefore, told Curtin to hold the balance due under the contract until the problem was fixed.
 {¶ 5} Warner returned to the property with his plumber the day after installing the system to check the service line from the curb into the house, but found no obstructions in that line. Warner testified that he changed nozzles to use less water, made sure there were no leaks in the system, and advised Curtin of his belief that there was a problem with the city shut-off valve or with the city pipe beyond the curb, problems only the city could remedy. According to Warner, Curtin said that he would work with the city to resolve the problem.
 {¶ 6} Despite unresolved problems with the irrigation system, Curtin and Grothaus paid the balance due under the contract.[2] Warner claims that neither Curtin nor Grothaus complained to him about the irrigation system during the year following installation and that they neither demanded return of the purchase price nor asked him to reinstall the system. In 2002, Curtin hired Warner to open and check the system in the spring and to winterize the system in the fall.
 {¶ 7} Curtin died on September 15, 2003, at which time Grothaus owned a one-half interest in the property. Curtin's one-half interest transferred to his two children.
 {¶ 8} Following Curtin's death, Grothaus again hired Warner to open and check the irrigation system and to winterize the system in 2004 and 2005. In the fall of 2004, Grothaus hired plumber Michael Hetzler to check and ultimately replace the water service line from the curb to the house. Hetzler testified that the minor kinks he found in the old service line had little effect on the functionality of the irrigation system, and the *Page 4 
replaced line did not remedy the problems with the irrigation system. On January 23, 2006, Grothaus sent a letter to Warner requesting that he correct the system and reimburse her for $2,925 incurred in trying to make the system work correctly. Warner did not respond to Grothaus' letter.
 {¶ 9} Grothaus filed this action against Warner on July 24, 2006, asserting claims for breach of contract, breach of express and implied warranties, and unjust enrichment. On February 26, 2007, Grothaus amended her complaint to add a claim for violation of the CSPA, R.C. 1345.01 et seq. In her amended complaint, Grothaus alleged that, although Warner contracted with Curtin, she "is Mr. Curtin's successor-in-interest, and maintains this action on that basis." Warner's answer to the amended complaint contained various affirmative defenses, including that Grothaus failed to state a claim upon which relief can be granted and that Grothaus was not the real party in interest.
 {¶ 10} The trial court conducted a bench trial on September 24, 2007, and issued its decision and judgment entry on January 16, 2008. The trial court concluded that Grothaus was a proper plaintiff, dismissed Grothaus' CSPA claim as time-barred, and found that Grothaus was entitled to recover against Warner "on all of the remaining theories," which included breach of contract, breach of express and implied warranties, and unjust enrichment. The trial court awarded Grothaus damages of $12,650, plus interest and costs. The trial court's damage award includes the $4,150 contract price, $4,500 that Grothaus paid to Hetzler in 2004, and $4,000 as the cost to "remediate" the system. *Page 5 
 {¶ 11} Warner filed a timely notice of appeal and asserts four assignments of error, as follows:
 I. THE TRIAL COURT ERRED IN DETERMIN[IN]G THAT THERE WAS A BREACH OF CONTRACT BECAUSE [GROTHAUS] AND KEN CURTIN ACCEPTED [WARNER'S] IRRIGATION SYSTEM WITH FULL KNOWLEDGE THAT IT DID NOT FUNCTION AS ANTICIPATED.
 II. THE TRIAL COURT ERRED IN DETERMINING THE AMOUNT OF DAMAGES AWARDED TO [GROTHAUS].
 III. THE TRIAL COURT ERRED IN DETERMINING THAT [GROTHAUS] WAS A [PROPER] PARTY TO THE ACTION.
 IV. THE TRIAL COURT ERRED IN DETERMINING THAT [WARNER'S] EXPRESS WARRANTY WAS NOT ENFORC[EA]BLE.
In her cross-appeal, Grothaus' single assignment of error asserts that "[t]he court erred by ruling that the statute of limitations in R.C. 1345.10 barred [Grothaus'] [CSPA] claim."
 {¶ 12} Because it concerns Grothaus' standing, we first address Warner's third assignment of error, by which he argues that Grothaus was not a proper party to this action. Specifically, Warner maintains that Grothaus failed to prove that she was either a successor to Curtin's interest in the contract or that she was otherwise eligible to sue under the contract.
 {¶ 13} Civ. R. 17(A) requires that every action be prosecuted in the name of the real party in interest. If a party to an action is not the real party in interest, the party lacks standing to prosecute the action. State ex rel. Jones v. Suster, 84 Ohio St.3d 70, 77,1998-Ohio-275. Before a court may consider the merits of a claim, the person seeking relief must establish standing to sue. See Ohio Contrs.Assn. v. Bicking, 71 Ohio St.3d 318, 320, 1994-Ohio-183. Thus, we must determine whether Grothaus has established that she is the real party in interest and, thus, has standing to bring this *Page 6 
action. Whether established facts confer standing is a question of law that an appellate court reviews de novo. Akron Metro. Hous. Auth. Bd. ofTrustees v. State of Ohio, Franklin App. No. 07AP-738, 2008-Ohio-2836, ¶ 11, citing Portage Cty. Bd. of Commrs. v. Akron, 109 Ohio St.3d 106,2006-Ohio-954, ¶ 90.
 {¶ 14} Only a party to a contract or an intended third-party beneficiary may bring an action on a contract in Ohio. Grant Thornton v.Windsor House, Inc. (1991), 57 Ohio St.3d 158, 161, citing Visintine Co. v. New York, Chicago St. Louis RR. Co. (1959), 169 Ohio St. 505. With respect to Grothaus' standing, the trial court held as follows:
 An initial inquiry would certainly involve an evaluation of whether Ms. Grothaus is properly a party * * * As previously discussed in this decision Ms. Grothaus did not marry Ken Curtin, the owner of the subject premises until after the installation of the irrigation system. She testified however that she had a mortgage on the property (T-36), participated with Mr. Curtin as his partner in this installation and purchase, and currently owns a ½ interest in the realty (T-34). She was also the executor of Mr. Curtin's estate. Beyond these facts, Mr. Warner's own testimony is replete with references to speaking with Ms. Grothaus from the day of installation forward. She is clearly a proper party.
On appeal, Grothaus argues that the trial court correctly concluded that she was a party to the contract. However, contrary to Grothaus' assertion, the trial court did not determine that she was a party to the contract. Rather, it merely held that she was a proper party to this action, i.e., that she had standing to sue, a holding that Warner contests.
 {¶ 15} We first consider whether Grothaus is a party to the contract and find from the contract's terms that she was not. The construction of a written contract is a matter of law. Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. The court's primary objective in construing a contract is to ascertain and *Page 7 
give effect to the parties' intent, which is presumed to reside in the contractual language used. Alternatives Unlimited-Special, Inc. v. OhioDept. of Edn., 168 Ohio App.3d 592, 2006-Ohio-4779, ¶ 20. When contract terms are clear and unambiguous, a court may not create a new contract by finding an intent not expressed in the clear contractual language.Alexander at 246. Thus, we look to the terms of the contract to determine the identities of the contracting parties.
 {¶ 16} Essential elements of a valid contract include an offer, acceptance, contractual capacity, consideration, manifestation of mutual assent, and legality of object and of consideration. Kostelnik v.Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. "Generally, an `offer' is defined as `the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Leaseway Distrib. Ctrs.,Inc. v. Dept. of Adm. Servs. (1988), 49 Ohio App.3d 99, 105, quoting Restatement of the Law 2d, Contracts (1981) 71, Section 24. Here, Warner's proposal represented an offer to enter into a bargain with Curtin. Grothaus' name does not appear in the proposal. "The manifested intention of the offeror determines the person or persons in whom is created a power of acceptance." Restatement of the Law 2d, Contracts (1981) 83, Section 29. Because Warner's offer was directed exclusively to Curtin, it created a power of acceptance only in Curtin.
 {¶ 17} The terms of the contract with respect to the parties' identities are clear and unambiguous, and we must give effect to the intent they express. Warner's offer created a right of acceptance only in Curtin, and Curtin undisputedly exercised that right, binding himself to the terms of Warner's offer. Accordingly, we find that Warner *Page 8 
and Curtin were the only parties to the contract. The facts noted by the trial court, including Grothaus' interest in the property and her discussions with Warner, may be relevant to whether Grothaus is otherwise entitled to maintain an action for damages, but they are irrelevant to Grothaus' status as a party to the contract.
 {¶ 18} A third party to a contract has no enforceable rights under the contract unless the contracting parties intended to create such rights.Gentile v. Ristas, 160 Ohio App.3d 765, 2005-Ohio-2197, ¶ 89. Thus, even though Grothaus was not a party to the contract, she may maintain an action on the contract if she was an intended third-party beneficiary. See Grant Thornton at 161. The mere conferring of a benefit on a beneficiary by performance under a contract, however, is insufficient to demonstrate that the beneficiary is an intended beneficiary. Under the "intent to benefit" test followed by the Ohio Supreme Court, a finding of intended third-party beneficiary status requires evidence that the promisee intended to directly benefit the third party and not simply that some incidental benefit was conferred by the promisee's actions under the contract. TRINOVA Corp. v. Pilkington Bros., P.L.C.,70 Ohio St.3d 271, 277-278, 1994-Ohio-524. Moreover, the performance of the contract must satisfy a duty owed by the promisee to the beneficiary.Hill v. Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St.3d 36,40, citing Norfolk Western Co. v. United States (C.A.6, 1980), 641 F.2d 1201, 1208.
 {¶ 19} Grothaus did not allege in either her original or amended complaint that she was an intended third-party beneficiary to the contract, nor did she make such an argument to the trial court. Moreover, the evidence presented to the trial court did not establish that Grothaus was an intended third-party beneficiary. Even if the record *Page 9 
contained evidence from which the trial court, as the trier of fact, could have concluded that Warner and Curtin intended to directly benefit Grothaus through performance of the contract, the record contained no evidence from which the court could have concluded that performance of the contract satisfied a duty that Curtin owed Grothaus.
 {¶ 20} Although Grothaus argues on appeal only that she was a party to the contract, Grothaus alleged in her amended complaint that she brought the action, not as a party to the contract, but as Curtin's "successor-in-interest." Neither in the trial court record nor on appeal has Grothaus clearly stated the basis for her allegation that she is a successor in interest to Curtin's contractual rights. Curtin's right to bring an action arising out of his contract with Warner constituted a chose in action, which he held as personal property and which passed to his executor upon his death.[3] See Burns v. Daily (1996),114 Ohio App.3d 693, 704. At the time of breach or loss under a contract, a chose in action becomes an accrued property right. Johnson at ¶ 12, citingPilkington N. Am., Inc. v. Travelers Cas. Sur. Co.,112 Ohio St.3d 482, 2006-Ohio-6551, ¶ 28, 89. In her capacity as administrator of Curtin's estate, Grothaus did not identify any claim against Warner as an asset of the estate. Although Grothaus could have potentially brought a claim for breach of contract or breach of warranty on behalf of the estate, she did not do so. Therefore, we conclude that Grothaus has failed to demonstrate standing on that basis. See Dumbauld v.Rudolph (Dec. 22, 2000), Wood App. No. WD-00-026 (holding that the trial court should have dismissed a claim where no evidence was presented to demonstrate that the plaintiff had standing to sue). See, *Page 10 
also, Everhome Mtge. Co. v. Rowland, Franklin App. No. 07AP-615,2008-Ohio-1282, ¶ 14 (stating that a plaintiff "needed to present the trial court with * * * evidence to prove its status as the [real party in interest]").
 {¶ 21} Because the evidence before the trial court did not establish that Grothaus has standing to maintain her claims against Warner arising from the contract, we conclude that the court erred in finding that Grothaus was a proper party and in entering judgment in her favor. For the foregoing reasons, we sustain Warner's third assignment of error and reverse the judgment of the Franklin County Municipal Court in favor of Grothaus. Having determined that Grothaus lacked standing, we conclude that Warner's remaining assignments of error are moot.
 {¶ 22} We now briefly turn to Grothaus' cross-appeal, by which she contends that the trial court erred in dismissing her CSPA claim as time-barred under the statute of limitations contained in R.C. 1345.10(C). Assuming that Grothaus had standing to maintain a CSPA claim, we agree with the trial court that Grothaus' claim was time-barred and, accordingly, find no error in the trial court's dismissal of that claim.
 {¶ 23} The CSPA "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03." Johnson v. MicrosoftCorp., 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 24. "In general, the CSPA defines `unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while `unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." Id. A deceptive, unfair or unconscionable act or practice is a violation of the CSPA whether it occurs before, *Page 11 
during or after the underlying consumer transaction. See R.C. 1345.02(A) and 1345.03(A).
 {¶ 24} A CSPA claim "may not be brought more than two years after the occurrence of the violation which is the subject of suit." R.C. 1345.10(C). Thus, the statute of limitations for a CSPA claim begins to run on the date of the occurrence of the violation, which may or may not correspond to the date of the underlying transaction. Montoney v.Lincoln Logs, Ltd., Franklin App. No. 06AP-284, 2007-Ohio-236, ¶ 26, citing Luft v. Perry Cty. Lumber Supply Co., Franklin App. No. 02AP-559, 2003-Ohio-2305, ¶ 27. No discovery rule applies to CSPA claims; R.C. 1345.10(C) establishes an absolute two-year limitations period for such actions. Id.
 {¶ 25} The sole issue in Grothaus' cross-appeal is when her CSPA claim accrued and when the two-year limitations period began to run. To make that determination, we first look to Grothaus' amended complaint to determine the basis of her CSPA claim. In her amended complaint, Grothaus alleges that "[t]he failure of [Warner] to install the sprinkler system properly and the failure of the sprinkler system to function satisfactorily are violations of the [CSPA]." The amended complaint sets forth no other alleged violations of the CSPA.
 {¶ 26} Relying on Montoney, the trial court found that Grothaus' CSPA claim accrued more than two years before she filed her CSPA claim. Both the functional failure of the irrigation system and any failure by Warner to properly install the system occurred and were known by all parties in the summer of 2001 immediately after installation of the system. Accordingly, any violation of the CSPA arising from such acts *Page 12 
accrued as of the date of installation and was time-barred, having accrued more than four years prior to Grothaus commencing this action.
 {¶ 27} In her arguments to the trial court at trial and in her written closing argument, Grothaus attempted to salvage her CSPA claim by arguing that, within two years of her filing suit, Warner additionally violated the CSPA by blaming the city for problems with the irrigation system without a factual basis for doing so, refusing to honor his one-year warranty, refusing to fix the irrigation system, and refusing to return Grothaus' telephone calls. The trial court rejected Grothaus' arguments, noting that Warner "never varied from his stance of blaming the city and requiring the homeowner to investigate the cause of the system failure themsel[f]." Accordingly, the trial court found that Grothaus' CSPA claim accrued as of the date of the transaction.
 {¶ 28} In Montoney, we rejected an argument similar to that Grothaus asserts here. In that case, appellants argued that the statute of limitations on their CSPA claim did not begin to run as long as the defendants failed to provide services in accordance with their alleged representations. There, at ¶ 41, we quoted our previous decision inLuft at ¶ 75, as follows:
 "* * * If a business's statement that it would try to remedy a complaint tolled the statute of limitations, the statute of limitations for countless actions between consumer and business could be tolled indefinitely. In the present case, the businesses did not remedy the problem in a timely manner and to Luft's satisfaction, and nothing prevented Luft from filing his causes of action within the statutorily prescribed limits."
We also distinguished the situation in Montoney from a continuing transaction where, for example, the parties entered into a series of annual guarantee renewals. *Page 13 
 {¶ 29} Here, we conclude that the trial court did not err in finding Grothaus' CSPA claim time-barred. First and foremost, the only CSPA violations alleged in Grothaus' amended complaint accrued as of the date of the installation, more than two years before Grothaus filed her claim. Additionally, while Grothaus argues that, as late as October 2004, Warner blamed the city for the system's failure without a factual basis for doing so, Warner has consistently maintained that position, and the record contains evidence from which Warner could have reasonably based that conclusion. That Warner continued to hold that position in 2004 did not create a separate and independent violation of the CSPA within the limitations period. Based on his consistent position, Warner did not remedy the problem, and nothing prevented Grothaus from filing a CSPA claim within the statutorily prescribed period. Accordingly, we find no error in the trial court's dismissal of Grothaus' CSPA claim as untimely, and we overrule Grothaus' single assignment of error in her cross-appeal.
 {¶ 30} For all these reasons, we sustain Warner's third assignment of error, render moot his first, second, and fourth assignments of error, and overrule Grothaus' assignment of error in her cross-appeal. The judgment of the Franklin County Municipal Court is reversed as to Grothaus' claims for breach of contract, breach of warranties, and unjust enrichment, but affirmed with respect to her CSPA claim.
Judgment affirmed in part and reversed in part.
PETREE, J., concurs.
TYACK, J., dissents.
[1] Grothaus and Curtin were married in August 2001.
[2] Grothaus testified that she and Curtin paid the cost of the irrigation system as a shared expense.
[3] A contractual chose in action consists of factual circumstances that give rise to a legal cause for breach of contract. Johnson v.Johnson, Hancock App. No. 5-07-34, 2008-Ohio-514, ¶ 12. See, also,Denning v. Nelson (1852), 1 Ohio Dec.Reprint 503 (defining choses in action, in part, as rights to receive damages for breach of contract, but which cannot be enforced without action).