[Cite as *Price v. KNL Custom Homes, Inc.*, 2015-Ohio-436.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

RON L. PRICE, et al.

    Appellee/Cross-Appellants

v.

KNL CUSTOM HOMES INC., et al.

    Appellants/Cross-Appellees

C.A. No.     26968

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2009-02-1261

DECISION AND JOURNAL ENTRY

Dated: February 6, 2015

---

MOORE, Judge.

{¶1} Defendant-Appellant/Cross-Appellee, KNL Custom Homes, Inc. ("KNL"), appeals from the March 16, 2012 verdict, and the December 31, 2012, and May 17, 2013 judgment entries of the Summit County Court of Common Pleas. Plaintiffs/Appellees, Ron L. Price, et al. ("the Prices"), cross-appealed from the same judgment entries. State Auto Insurance Company ("State Auto") filed a brief as an Intervening Plaintiff/Cross-Appellee, and Todd Folden is listed as a Cross-Appellee. We affirm, in part, reverse, in part, and remand for further proceedings consistent with this decision.

I.

{¶2} In 2005, the Prices entered into a contract with KNL to design and construct their custom home. According to the Custom Home Construction Agreement ("Construction Agreement"), KNL was to build a 5,493 square foot home, with an 882 square foot bonus room, totaling 6,375 square feet of livable space for the original contract price of $751,386. The work

on the Prices' home was to be substantially completed in approximately eleven months after excavation began on the basement. The record indicates that KNL began construction on November 21, 2005, the Summit County Building Department completed its final inspection on February 12, 2007, and a Certificate of Occupancy was issued by the Summit County Building Department on February 16, 2007. Per the Construction Agreement, KNL was to schedule a walk-through of the home with the Prices when construction was substantially completed, and the Prices were to create a "Final Punch List Agreement" as an indication of their final acceptance of KNL's work and contractual obligations. However, after the walk-through, a disagreement arose between the parties, and the Prices refused to execute the punch list, or to release the final installment of their construction loan to KNL in order to complete the project. The record indicates that the remainder of the construction loan, in the amount of $25,000, was placed into an escrow account, and variations of the punch list went back and forth between the parties for some time. Although the parties never agreed upon the punch list, the Prices moved into the home in April of 2007. In October of 2010, the Prices vacated the home due to safety concerns raised by the structural engineer that they hired to inspect the property and offer remedial solutions.

{¶3} On February 13, 2009, the Prices filed a complaint against KNL and Todd Folden, the owner and president of KNL, which, as amended, alleged: (1) breach of contract; (2) fraudulent misrepresentation; (3) breach of the Ohio Consumer Sales Practices Act ("CSPA"); and (4) negligence. KNL and Folden filed an answer and counterclaim. In their counterclaim, they alleged that KNL was still owed $20,597.19 for work and material used in completion of the project.

{¶4} KNL and Folden jointly filed a motion for summary judgment on the Prices' CSPA and fraud claims, as well as on all claims against Folden individually. As to the CSPA, KNL and Folden specifically argued that the Prices' claims are barred by the applicable statute of limitations. The trial court denied the motion and the matter proceeded to jury trial.

{¶5} At the conclusion of the three week jury trial, KNL and Todd Folden filed a motion for directed verdict arguing that the trial court should rule in their favor on the Prices' claims for (1) violations of the CSPA; (2) fraud; and (3) all claims against Todd Folden. The trial court denied this motion and these matters were submitted to the jury.

{¶6} KNL and Todd Folden also objected to the court's proposed jury instructions and interrogatories. Further, after the jury concluded its deliberations, an issue arose regarding possible inconsistencies with the jury's answers to several CSPA interrogatories and the general verdict. Specifically, in interrogatories 17(F), 17(J), 17(O), 17(Z) and 17(BB), the jury found that KNL did not commit "unfair or deceptive act[s]," but still awarded damages to the Prices under the CSPA. The trial court amended these interrogatories by crossing out language requiring the jury to find that the acts were "unfair or deceptive," and, instead, required only that the jury find KNL committed these acts knowingly, and that the Prices were damaged. The trial court initialed the revisions and sent the interrogatories back with the jury to "briefly look over them and see if that makes a difference[.]" KNL and Todd Folden objected to the trial court's modification of the interrogatories and argued that if the jury did not find an act to be unfair or deceptive it is not a violation of the CSPA.

{¶7} Upon reviewing the amended CSPA interrogatories, the jury found that KNL acted knowingly in: (1) requiring the Prices to pay $2,600 to clear trees from the lot to install the septic system; (2) failing to install two steel support beams at the foot of the steps in the

basement; (3) failing to install properly sized lateral support beams over the glass block windows in the basement; (4) substituting #2 grade studs for #1 grade studs in the residence; (5) failing to install the 220 amp electric service; and (6) failing to install insulation with the values required in the contract. The jury foreman whited out the jury's previous answers of "no," as to whether KNL's commission of the above acts was "unfair or deceptive," and changed the jury's answers to "yes," as to whether KNL committed these acts knowingly. The jury never specifically found that KNL's acts were unfair or deceptive as to the CSPA claims.

{¶8} On the Prices' breach of contract claim against KNL, the jury returned a verdict in favor of KNL, and on KNL's counterclaim for breach of contract against the Prices, the jury also returned a verdict in favor of KNL in the amount of $20,597.19. On the Prices' negligence claim against KNL, the jury returned a verdict in favor of the Prices in the amount of $20,000, and on the Prices' fraud claim against KNL, the jury returned a verdict in favor of KNL. On the Prices' CSPA claim against KNL, the jury returned a verdict in favor of the Prices in the amount of $38,311.62. The jury also returned a verdict in favor of Todd Folden on the Prices' claims for breach of contract, negligence, fraud, and CSPA violations.

{¶9} KNL filed a motion for judgment notwithstanding the verdict ("JNOV") arguing that: (1) the Prices' CSPA claims are barred by the applicable statute of limitations; and (2) pursuant to R.C. 1345.09(B), the Prices failed to meet their burden of proof to support their claim for treble damages and attorney's fees. The Prices also filed for JNOV, arguing that they are entitled to judgment in their favor for breach of contract, negligence, CSPA, and KNL's counterclaim for breach of contract, or, in the alternative, a new trial pursuant to Civ.R. 59(A)(5), (A)(6), and (A)(7). Further, if the trial court denied their motion for JNOV or new

trial, the Prices moved for an award of treble damages and attorney's fees. The Prices also presented an argument in opposition to KNL and Todd Folden's motion for JNOV.

{¶10} State Auto, KNL's insurer, moved to intervene, and filed a complaint for declaratory judgment and motion for summary judgment. In its motion, State Auto sought a declaration that it owed no duty to indemnify KNL for any judgment based upon the Prices' CSPA and negligence claims.

{¶11} The trial court: (1) denied KNL's motion for JNOV, (2) denied the Prices' motion for JNOV and/or for a new trial, and granted State Auto's motion for summary judgment. Further, the trial court awarded treble damages on the Prices' CSPA claim against KNL in the amount of $114,934.86, and attorney's fees in the amount of $130,000.

{¶12} KNL appealed[1], raising three assignments of error for our consideration. The Prices cross-appealed, raising two assignments of error for our review. For ease of discussion, we will address KNL's assignments of error out of order.

**Appeal**

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED TO THE PREJUDICE OF [KNL] WHEN IT FAILED TO DISMISS [THE PRICES'] CONSUMER SALES PRACTICES ACT CLAIMS.

{¶13} In its second assignment of error, KNL argues that the trial court erred in denying its motions for summary judgment, directed verdict, new trial and judgment notwithstanding the

---

[1] The first attempted appeal and cross-appeal were dismissed via journal entry because there was no final, appealable order filed with this Court, and, therefore, we lacked subject matter jurisdiction over the matter. *Price v. KNL Custom Homes, Inc.*, 9th Dist. Summit No. 26823, (May 13, 2013).

verdict on the issue of whether the Prices' CSPA claims are barred by the applicable statute of limitations. Specifically, KNL argues that the acts or omissions that the jury found to be CSPA violations in interrogatory numbers 17(F)(1), 17(G)(1), 17(I), 17(J), 17(O), 17(P), 17(Q), 17(W), 17(X), 17(Z), and 17(BB) would have necessarily occurred during the construction of the Prices' home and are time-barred by the two-year statute of limitations set forth in R.C. 1345.10(C). KNL reasons that because the Prices filed their complaint on February 13, 2009, any CSPA claims occurring prior to February 13, 2007, are now time-barred.

{¶14} "[M]otions for directed verdict and for JNOV present questions based on the sufficiency of the evidence * * * ." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 28. A JNOV motion pursuant to Civ.R. 50(B) presents questions of law. *Id.* at ¶ 25.

> As with an appeal from a court's ruling on a directed verdict, this Court reviews a trial court's grant or denial of a JNOV de novo. JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party. If reasonable minds could reach different conclusions, the motion must be denied.

(Internal quotations and citations omitted.) *Schottenstein Zox & Dunn Co., L.P.A. v. Reineke*, 9th Dist. Medina No. 10CA0138-M, 2011-Ohio-6201, ¶ 8.

{¶15} In *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 24, the Supreme Court of Ohio explained that the CSPA:

> [P]rohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03. In general, the CSPA defines "unfair or deceptive consumer sales practices" as those that mislead consumers about the nature of the product they are receiving, while "unconscionable acts or practices" relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue.

The Act defines a "supplier" as a " * * * seller, lessor * * * engaged in the business of effecting or soliciting consumer transactions * * *." R.C. 1345.01(C). A "consumer transaction" is a " * *

* sale, lease * * * of an item of goods * * * to an individual for purposes that are primarily personal * * *." R.C. 1345.01(A). R.C. 1345.02(A) states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." "R.C. 1345.02(B) enumerates, without limitation, certain specific deceptive acts or practices[,]" including "[t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not[,]" and "[t]hat a specific price advantage exists, if it does not[.]" *Montoney v. Lincoln Logs, Ltd.,* 10th Dist. Franklin No. 06AP-284, 2007-Ohio-236, ¶ 25; R.C. 1345.02(B)(8). Further, the CSPA is a remedial law and, as such, must be liberally construed. *Whitaker v. M.T. Automotive, Inc.,* 111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 11, citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990).

**{¶16}** The CSPA establishes the statute of limitations for bringing a claim as follows: "[a]n action under sections 1345.01 to 1345.13 of the Revised Code *may not be brought more than two years after the occurrence of the violation* which is the subject of suit, or more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later." (Emphasis added.) R.C. 1345.10(C). "[T]he statute of limitations commences to run from the date of the occurrence of the violation, which is not necessarily the date of any underlying transaction." *Montoney* at ¶ 26. In *Montoney*, the Tenth District Court of Appeals clarified that the "General Assembly explicitly recognized that a CSPA violation may occur before, during, or after the underlying consumer transaction. R.C. 1345.02(A) and R.C. 1345.03(A). *No discovery rule applies* to claims for damages under the CSPA; 'R.C. 1345.10(C) sets forth an *absolute* two-year statute of limitations for such damage actions.'"

(Emphasis added.) *Montoney* at ¶ 26, quoting *Luft v. Perry Cty. Lumber & Supply Co.,* 10th Dist. Franklin No. 02AP-559, 2003-Ohio-2305, ¶ 25. *See also Cypher v. Bill Swad Leasing Co.*, 36 Ohio App.3d 200, 202 (10th Dist.1987) ("In reading R.C. 1345.09 and 1345.10 *in pari materia,* R.C. 1345.09(C) sets forth the statute of limitations for a rescission of a consumer transaction. The time within which a consumer may rescind a contract is a 'reasonable time after the consumer discovers or should have discovered the ground for it * * *.' *See* R.C. 1345.09(C). However, the discovery rule of R.C. 1345.09(C) cannot be read into R.C. 1345.10(C). R.C. 1345.10(C) sets forth an absolute two-year statute of limitations in which to file *suit* to recover treble damages. Thus, read *in pari materia,* the very language of R.C. 1345.09(C) and 1345.10(C) would preclude the 'discovery' exception to the two-year statute of limitations that is applicable in a damage action pursuant to R.C. 1345.10(C)." (Emphasis sic.)).

{¶17} In *Quetot v. M & M Homes, Inc*., 7th Dist. Mahoning No. 12 CO 1, 2013-Ohio-752, ¶ 4, the Seventh District Court of Appeals addressed a similar issue regarding the statute of limitations for an alleged CSPA violation arising out of the construction of a single family home in New Waterford, Ohio. Construction on the Quetots' home commenced in late 2006, early 2007, and they moved into the home in February, 2007. *Id*. at ¶ 4-5. At that time, the Quetots found problems with the structure of the home, including the drywall, roof, plumbing, water leaks and excess moisture. *Id*. at ¶ 5. On October 27, 2010, the Quetots filed a complaint against M & M Homes, Inc. alleging negligence, breach of implied warranty of habitability, breach of implied warranty, violation of the CSPA, breach of contract, and unjust enrichment. *Id*. at ¶ 6. After the completion of discovery, M & M Homes, Inc. filed a motion for partial summary judgment, and the Quetots dismissed their claims for breach of implied warranty of habitability and unjust enrichment. *Id*. The trial court granted M & M Homes, Inc.'s motion

for summary judgment, in part, holding that the Quetots' CSPA claim was time barred. In affirming the trial court's decision, the Seventh District stated:

> No discovery rule applies to claims for *monetary damages* under the CSPA. *Weaver v. Armando's, Inc*., 7th Dist. Mahoning No. 02 CA 153, 2003-Ohio-4737, ¶ 37; *Lloyd v. Buick Youngstown, GMC*, 115 Ohio App.3d 803, 807 (7th Dist.1996). R.C. 1345.09(C)(1) limits the discovery rule to claims for rescission or revocation of the consumer transaction: "(C)(1) Except as otherwise provided in division (C)(2) of this section, in any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction." *In other words, when there is a claim for money damages under the CSPA, the statute of limitations begins to run when the violation occurs, not when the consumer discovers the violation.*

(Emphasis added.) *Quetot* at ¶ 12. Further, the Court concluded that the Quetots failed to demonstrate that M & M Homes, Inc. "took any action within two years of the filing of their complaint that constitutes an 'occurrence of a violation'" under the CSPA. *Id*. at ¶ 23.

{¶18} Further, in *Varavvas v. Mullet Cabinets*, 185 Ohio App.3d 321, 2009-Ohio-6962, ¶ 34-37, (5th Dist.), the Fifth District Court of Appeals upheld the trial court's granting of Mullet Cabinets' motion for directed verdict on the Varavvas' CSPA claim. In 1999, Mr. and Mrs. Varavvas contracted with Mullet Cabinets to build custom birch cabinets for their kitchen and several bathrooms. *Id*. at ¶ 4. After the cabinets had been installed, the Varavvases noticed that they "easily chipped and cracked and began to discolor." *Id*. at ¶ 5. In late 2006 or 2007, the Varavvases notified Mullet Cabinets about the problems with the cabinets, and Mullet Cabinets agreed to refinish the cabinets at no cost to the Varavvases. *Id*. In February of 2007, during the repairs to the cabinets, Mrs. Varavvas overheard a representative of Mullet Cabinets say that "particle board painted better than wood." *Id*. at ¶ 6. This prompted her to have the cabinets inspected in order to determine if they were entirely constructed of birch wood or some other materials. *Id.* After discovering that the cabinets were not constructed of 100 percent

birch wood, the Varavvases filed a complaint against Mullet Cabinets alleging breach of contract, violation of the CSPA, and fraud, based only upon "the lack of birch hardwood in the cabinets." *Id*. at ¶ 7.

{¶19} In holding that the Varavvas' CSPA claim was time-barred, the Fifth District reasoned, "[t]he determination of whether the violation occurred within the statute of limitations is not dependent on whether there is a continuing relationship between the parties, but rather whether there is evidence of conduct constituting deceptive or unconscionable acts occurring *within* the two-year statute-of-limitations period." (Emphasis added.) *Id*. at ¶ 36, citing *Montoney*, 2007-Ohio-236, at ¶ 38. Further, the Fifth District stated that:

> the statute of limitations commenced to run in 1999 when [Mullet Cabinets] constructed and installed the cabinets because it was at that time that the alleged CSPA violation occurred. [The Varavvases] discovered in February 2007 that the cabinets were not 100 percent birch hardwood. As stated above, there is no discovery rule under which the statute of limitations can be tolled.

*Varavvas* at ¶ 37.

{¶20} Here, the Prices filed their complaint alleging CSPA violations, and other claims, on February 13, 2009. The record indicates that eighteen inspections had been completed at the Prices' home prior to February 16, 2007, the date on which Summit County Building Standards ("SCBS") issued a Certificate of Occupancy. The final inspection at the home was completed on February 12, 2007, more than two years prior to the filing of the complaint. Further, John Labriola, the Chief Building Official for SCBS, testified that a Certificate of Occupancy is issued for a residence or commercial building "after all inspections are completed and approvals are made[.]" The Certificate of Occupancy indicates that the permit for "Building" was finalized on February 12, 2007, the permits for "Electrical" were finalized on January 23, 2007, the permits for "Mechanical" were finalized on February 12, 2007, and the permit for

"Plumbing" was finalized on February 9, 2007. Additionally, the Prices' bank did a final inspection and issued a full release of funds on February 8, 2007.

{¶21} The jury found in favor of the Prices on the following CSPA claims as set forth in Interrogatory Nos. 17(F)(1), 17(G)(1), 17(I), 17(J), 17(O), 17(P), 17(Q), 17(W), 17(X), 17(Z), and 17(B)(B):

(1) KNL required [the Prices] to pay $2,600 to clear trees from the lot to install the septic system;

(2) KNL charged [the Prices] a $521.38 mark up on the cost of I-joists;

(3) KNL installed steel support posts in the basement which were of insufficient size and strength;

(4) KNL failed to install two steel support beams at the foot of the steps;

(5) KNL failed to install properly sized lateral support beams over the glass block windows in the basement;

(6) KNL failed to install W8 and 31lb steel beams in the basement;

(7) KNL substituted #2 grade studs instead of using #1 grade studs;

(8) KNL required [the Prices] to pay an additional $280 for paint;

(9) KNL failed to install 220 amp electrical service to the home;

(10) KNL failed to install insulation with the values required by the contract; and

(11) KNL failed to install aluminum sofit.

{¶22} As indicated above, the statute of limitations set forth in R.C. 1345.10(C) began to run from the date of the occurrence of the violations. *See Montoney*, 2007-Ohio-236, ¶ 26-27. By the very nature of these violations, they necessarily occurred during the actual construction of the Prices' home, *prior* to the final home inspection on February 12, 2007. As such, because the Prices filed their complaint on February 13, 2009, the eleven CSPA violations listed above are time-barred. Therefore, even in viewing the evidence in a light most favorable

to the Prices and presuming any doubt in their favor, reasonable minds could come to but one conclusion, that being in favor of KNL.

{¶23} Accordingly, KNL's second assignment of error is sustained.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE PREJUDICE OF [KNL] BY UNILATERALLY AMENDING INTERROGATORIES.

## ASSIGNMENT OF ERROR III

[THE PRICES] FAILED TO MEET THEIR BURDEN OF PROOF TO SUPPORT THEIR CLAIM FOR TREBLE DAMAGES AND ATTORNEY'S FEES.

{¶24} In its first assignment of error, KNL argues that the trial court erred in unilaterally amending certain interrogatories regarding the Prices' CSPA claims. Specifically, KNL argues that the trial court violated Civ.R. 49(B) by deleting the phrase "committed an unfair or deceptive act," from interrogatory numbers 17F(1), 17J(1), 17O(1), 17Q(1), 17X(1), 17Z(1) and 17BB(1), and returning the amended interrogatories to the jury for further deliberation without this required language.

{¶25} In its third assignment of error, KNL argues that the trial court erred in awarding treble damages and attorney's fees to the Prices because they failed to meet their burden of proof, under the CSPA, in support of these claims.

{¶26} Based upon our resolution of KNL's second assignment of error, KNL's first and third assignments of error are moot and we decline to further address them. *See* App.R. 12(A)(1)(c).

**Cross-appeal**

### CROSS-APPELLANTS' ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY FAILING TO GRANT [THE PRICES'] MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON THEIR BREACH OF CONTRACT, NEGLIGENCE AND [CSPA] CLAIMS, AND ON [KNL'S] COUNTERCLAIM, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL ON ALL SUCH CLAIMS.

**{¶27}** In their first assignment of error, the Prices argue that they are entitled to a JNOV on their claims for breach of contract, negligence, CSPA, and KNL's counterclaim for breach of contract. Further, the Prices argue that they are entitled to a new trial pursuant to Civ.R. 59(A)(5), (A)(6), and (A)(7).

**JNOV**

**{¶28}** As stated above, a motion for JNOV presents questions of law which we review de novo. *Eastley*, 2012-Ohio-2179, at ¶ 25; s*ee* Civ.R. 50. Further, we must view the evidence in a light most favorable to the non-moving party, and presume any doubt in favor of the non-moving party. Then, if reasonable minds could come to but one conclusion, that being in favor of the moving party, the motion must be granted. However, if reasonable minds could reach different conclusions, the motion must be denied. *See Reineke*, 2011-Ohio-6201, at ¶ 8.

**Breach of Contract**

**{¶29}** The Prices argue that they are entitled to a JNOV on their breach of contract claim and on KNL's counterclaim alleging breach of contract. Specifically, the Prices contend that the jury failed to abide by the trial court's instruction that the applicable building code was part of the contract between the parties, because, in Interrogatory No. 6, the jury found that the Prices "establish[ed] by a preponderance of the evidence that KNL was *negligent* in failing to construct [the Prices'] residence in accordance with applicable building ordinances and

codes[,]" but still found in favor of KNL on the Prices' breach of contract claim and on the counterclaim. (Emphasis added.)

{¶30} "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *J. Bowers Constr. Co., Inc. v. Gilbert*, 9th Dist. Summit No. 27044, 2014-Ohio-3576, ¶ 8, quoting *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.,* 436 F.Supp. 409, 414 (N.D.Ohio 1976). Further, "to prove a breach of contract claim [the Prices] must demonstrate by a preponderance of the evidence that: (1) a contract existed, (2) the [Prices] fulfilled [their] obligations, (3) [KNL] failed to fulfill [its] obligations, and (4) damages resulted from this failure." *Comstock Homes, Inc. v. Smith Family Trust*, 9th Dist. Summit No. 24627, 2009-Ohio-4864, ¶ 7, quoting *Second Calvary Church of God in Christ v. Chomet,* 9th Dist. Lorain No. 07CA009186, 2008-Ohio-1463, ¶ 9, citing *Lawrence v. Lorain Cty. Cmty. Coll.,* 127 Ohio App.3d 546, 548-49 (9th Dist.1998).

{¶31} In its instructions to the jury, the trial court advised:

* * *

A contract is an agreement or exchange of promises supported by something of value, whether oral or in writing, between two or more persons to pay a sum of money or to perform a certain act. The law in effect at the time of the making of a contract becomes a part of the contract. In the case of a construction contract such as is at issue in this case, the applicable building code becomes a part of the contract, and KNL has the duty to comply with the applicable building code in completing the construction of the Price's residence under the contract.

* * *

If one party to a contract fails to perform a material or essential element of a contract, such a breach excuses the other party from any further performance.

* * *

"Material breach" * * * means a breach that violates a term essential to the purpose of the contract. Mere nominal, trifling, slight or technical departures from the contract terms are not material breaches so long as they occur in good faith.

* * *

"Substantial performance" by a party means the absence of a breach that violates a term essential to the purpose of the contract. "Substantial performance" may include mere nominal, trifling, slight or technical departures from the contract terms so long as the party acts in good faith.

* * *

{¶32} It is well-settled that "[a] 'material breach of contract' is a failure to do something that is *so fundamental* to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." (Emphasis added.) *Marion Family YMCA v. Hensel*, 178 Ohio App.3d 140, 2008-Ohio-4413, ¶ 7 (3d Dist.), citing Williston on Contracts, Chapter § 63:3.

{¶33} Here, the Prices' expert, Joseph Nyzen, a structural engineer, testified that KNL failed to abide by the building code in designing and constructing the home, and that, as a result, the home could collapse. Additionally, Mr. Nyzen's detailed expert report was admitted into evidence. However, the jury also heard the testimony of KNL's expert, Bruce Vetter, who is also a structural engineer by trade. Mr. Vetter stated, in part, that: (1) the two cracks on the northwest and west end corners of the basement, and one crack on the south wall in the basement, were cosmetic in nature; (2) he did not observe any moisture penetrating the basement; (3) the home was constructed in a workmanlike manner; (4) while in the attic of the home, he did not "observe any evidence of structural distress of the trusses, the roof above the trusses, or the bottom cord of the trusses"; (5) there is no distress in the basement floor; (6) based upon his education, training and experience as an engineer, he believed the walls in the

basement were in equilibrium; and (7) he did not observe any structural distress to the drywall, ceilings or ceramic tile. Further, although Mr. Vetter admitted on cross-examination that certain code violations existed, he explained during re-direct that, between 2007 and 2011, he did not observe *any evidence* of potential structural collapse because of how the columns and beams were installed in the home. Additionally, the jury watched a 30 minute video, marked as Defendant's Exhibit HH, wherein they were able to actually see the condition of the Prices' home as it stood on March 3, 2012, including: the exterior of the home, the basement, the garage, the first floor, the second floor, the bonus room, and the attic. During his testimony, Todd Folden stated that on the day of the videotape, "[i]t was cold and *very windy*." (Emphasis added.) Also, Todd Folden testified that, although the Prices' expert has recommended that over 8,000 square foot of brick, or roughly 60,000 bricks, should be removed from the home in order to correct some cracks in the veneer, the actual square footage of cracked brick veneer is 0.4 percent, or less than 1 percent of the brick on the home.

{¶34} As such, the jury could have reasonably found that while KNL was negligent for violating certain building code sections, these code violations did not rise to the level of a material breach of contract affecting KNL's substantial performance in construction of the home. Also, "[j]uries are presumed to follow the court's instructions[,]" and there is no indication in this record that the jury failed to abide by the trial court's instructions regarding either the definition of a contract, or what constitutes material breach and substantial performance. *State v. Lowe*, 164 Ohio App.3d 726, 2005-Ohio-6614, ¶ 14 (10th Dist.), quoting *State v. Jones*, 90 Ohio St.3d 403, 414 (2000).

{¶35} Viewing the evidence in a light most favorable to KNL and presuming any doubt in favor of KNL, reasonable minds could reach differing conclusions with regard to whether

KNL *materially* breached its contract with the Prices and/or failed to substantially perform under the contract. Therefore, the trial court did not err in denying the Prices' motion for JNOV on both their claim for breach of contract, and KNL's counterclaim.

**Negligence**

{¶36} The Prices also argue that they are entitled to a JNOV on their negligence claim because Timothy Calvey, one of KNL's expert witnesses, testified that it would cost $55,010 to remediate the home, but the jury only awarded $20,000 in damages. The record reflects that Mr. Calvey created a spreadsheet titled "Probable Cost of Construction Estimate" that was submitted into evidence as Defendant's Exhibit T-6. Further, the record reflects that, in Interrogatory Nos. 5, 6, 7, and 8, the jury was specifically asked to find whether the Prices established by a preponderance of the evidence that: (1) KNL was negligent in failing to construct the home in a timely manner, (2) KNL was negligent in failing to construct the home in accordance with applicable building ordinances and codes, (3) KNL was negligent in failing to construct the home in accordance with the drawings, plans, specifications and applicable standards, and (4) KNL was negligent in failing to construct the home in a workmanlike manner. The jury only answered two out of the four interrogatories in the affirmative: (1) that KNL was negligent in failing to construct the home in accordance with applicable building ordinances and codes, and (2) that KNL was negligent in failing to construct the home in a workmanlike manner.

{¶37} In denying their motion for JNOV as to negligence, the trial court stated:

The [c]ourt finds that the jury may have reasonably determined that the degree of [] KNL's negligence, in failing to build the residence in accordance with the code and in a workmanlike manner, only accounted for that certain portion of [Mr.] Calvey's estimated costs of remediation.

**{¶38}** Viewing the evidence in a light most favorable to KNL and presuming any doubt in favor of KNL, reasonable minds could reach differing conclusions with regard to the amount of damages that should be awarded to the Prices on their negligence claim. Therefore, the trial court did not err in denying the Prices' motion for JNOV with regard to negligence.

**CSPA**

**{¶39}** Additionally, the Prices argue that they are entitled to a JNOV on their CSPA claim against KNL. This is because in Interrogatory Nos. 17(II)(1), 17(JJ)(1), and 17(KK)(1), the jury answered that KNL did not commit an unfair or deceptive act by failing to construct the home in accordance with the applicable building code, free of defects or in an unworkmanlike manner, even though in Interrogatory Nos. 6 and 8, it responded affirmatively that KNL was negligent in these same regards.

**{¶40}** Due to our resolution of KNL's second assignment of error, these specific CSPA claims would be time-barred by the absolute two-year statute of limitations. As such, even if the trial court erred in denying the Prices' JNOV motion as to the CSPA, the error is harmless. Further, the Prices' argument focuses only on the amount of damages that the jury should have awarded for their CSPA claim based upon Mr. Calvey's remediation estimate. However, the Prices have not developed this argument, nor have cited to any case law supporting this position. *See* App.R. 16(A)(7). ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.")

**{¶41}** Viewing the evidence in a light most favorable to KNL and presuming any doubt in favor of KNL, reasonable minds could reach differing conclusions with regard to the amount

of damages that should be awarded to the Prices on their CSPA claim. Therefore, the trial court did not err in denying the Prices' motion for JNOV with regard to the CSPA.

**New Trial**

{¶42} The Prices also argue that they are entitled to a new trial pursuant to Civ.R. 59(A)(5), (A)(6), and (A)(7).

{¶43} Civ.R. 59(A) states, in relevant part, that:

A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

* * *

(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

(7) The judgment is contrary to law;

* * *

"This Court's standard of review of an order denying a motion for a new trial depends upon the grounds of the motion. Depending upon the basis of the motion for a new trial, this Court will review a trial court's decision to grant or deny the motion under either a de novo or an abuse of discretion standard of review." (Internal quotations and citation omitted.) *Jackovic v. Webb,* 9th Dist. Summit No. 26555, 2013-Ohio-2520, ¶ 17. Here, the Prices do not raise an issue of law, but instead challenge the propriety of the trial court's exercise of discretion in denying their motion. Accordingly, the trial court's decision will be reviewed for an abuse of discretion. *See Dragway 42, L.L.C. v. Kokosing Constr. Co., Inc.,* 9th Dist. Wayne No. 09CA0073, 2010-Ohio-4657, ¶ 34; *Reineke,* 2011-Ohio-6201, at ¶ 11. An abuse of discretion "implies that the

court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶44} First, pursuant to Civ.R. 59(A)(5), the Prices argue that they are entitled to a new trial because the jury only awarded $20,000 on their negligence claim, and $38,311.62 on their CSPA claim, when KNL "admitted" through its experts to owing $55,010 in damages. Civ.R. 59(A)(5) allows for a new trial where there is "[e]rror in the amount of recovery, whether too large or too small, when the action is * * * for the injury or detention of property." In denying the Prices' motion on these grounds, the trial court stated that it "does not find that the expert's estimate for remediation is an admission of the damages due [the Prices], nor does [it] find that there was an 'error in the amount of recovery[.]'" Due to our resolution of KNL's second assignment of error, we will only address the jury's award of $20,000 on the negligence claim.

{¶45} At trial, Timothy Calvey, an expert witness on behalf of KNL, testified that, in 2011, he performed three inspections at the Prices' home. As a result of those inspections, he created an itemized list of twenty-seven potential repairs and *estimated* those repairs to cost $55,010.94. This list was titled "Probable Cost of Construction Estimate," and was submitted to the jury as KNL's Exhibit T-6. In Interrogatory Nos. 6 and 8, the jury found that KNL was negligent for failing to construct the Prices' residence in accordance with applicable building ordinances and codes, and for failing to construct the Prices' residence in a workmanlike manner. However, in Interrogatory Nos. 5 and 7, the jury found that KNL was *not* negligent for failing to construct the residence in a timely manner, or for failing to construct the residence in compliance with the drawings, plans, specifications and the applicable standards of practice. In Interrogatory No. 9, the jury awarded compensatory damages for negligence in the amount of $20,000.

**{¶46}** "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice *or* a finding that the award is manifestly excessive." (Emphasis sic.) *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 654 (1994). Further, a jury "may separate the testimony as they wish according to what is credible to them." *State v. Mastel*, 26 Ohio St.2d 170, 177 (1971). (A jury is "free to believe all, part, or none of the testimony of each witness." *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993).)

**{¶47}** In the present matter, the trial court instructed the jury as to the weight of expert testimony as follows:

* * *

As with other witnesses, on you alone rests the duty of deciding what weight to give the testimony of the experts. In deciding its weight, consider their skill, experience, knowledge, veracity, familiarity with the facts of this case, and the usual rules for testing believability in deciding the weight to give the testimony.

* * *

Further, the trial court instructed the jury as to damages on the Prices' negligence claim as follows:

* * *

If you find for the [Prices] on their negligence claim against KNL and/or Folden, you will determine from a preponderance of the evidence the amount of money that will reasonably compensate the [Prices] for their actual damages.

* * *

**{¶48}** The jury clearly found KNL to be negligent on only two of the four negligence claims. As such, the jury could have reasonably awarded a lesser amount in damages for negligence than those set forth in Mr. Calvey's report. *See Zerkle v. Kendall*, 172 Ohio App.3d

468, 2007-Ohio-3432, ¶ 23 (2d Dist.) (The Second District reversed the trial court's denial of a motion for new trial, pursuant to Civ.R. 59(A)(5), where the jury found the defendant negligent, but failed to award "at least nominal damages" to the plaintiff.) Therefore, because the jury awarded $20,000 to the Prices on two of their negligence claims, under the circumstances of this case we cannot conclude that the trial court abused its discretion in denying the Prices' motion pursuant to Civ.R. 59(A)(5).

{¶49} Second, pursuant to Civ.R. 59(A)(6), the Prices argue that they are entitled to a new trial because the jury's verdicts as to breach of contract, negligence, CSPA, and KNL's counterclaim are not sustained by the weight of the evidence. In support of this argument, the Prices again argue that the verdicts for breach of contract and negligence cannot be reconciled, and that the jury awarded inadequate damages to the Prices on their CSPA and negligence claims.

{¶50} In *Marsico v. Skrzypek*, 9th Dist. Lorain No. 13CA010410, 2014-Ohio-5185, ¶ 55, this Court stated:

> When considering a Civ.R. 59(A)(6) motion for a new trial, a trial court must weigh the evidence and pass on the credibility of the witnesses. [Yet], the trial court assesses the weight and credibility in a more limited sense than would a jury; the court is to determine, in light of its broad discretion, whether a manifest injustice has occurred. The job of the appellate court is to review whether the trial court abused its discretion in making this determination. Absent some indication that the trial court was unreasonable, arbitrary or unconscionable in exercising its discretion, the judgment of the trial court will not be disturbed.

(Internal quotations and citations omitted.) *Reineke*, 2011-Ohio-6201, at ¶ 11.

{¶51} Based upon our resolution of KNL's second assignment of error as to the CSPA, and our resolution of the Prices' arguments above as to breach of contract and damages, we conclude that the trial court did not err in denying the Prices a new trial based upon Civ.R. 59(A)(6), because the jury's verdicts are not against the manifest weight of the evidence.

**{¶52}** Third, pursuant to Civ.R. 59(A)(7), the Prices argue that they are entitled to a new trial because the jury ignored the trial court's instructions in awarding judgment in favor of KNL on the Prices' breach of contract claim, KNL's counterclaim, and in only awarding the Prices $20,000 in damages on their negligence claim. In their brief, the Prices failed to further develop this argument, nor did they support it with citations from the record or pertinent law.

**{¶53}** As stated above, "[j]uries are presumed to follow the court's instructions[.]" *Lowe*, 2005-Ohio-6614, at ¶ 14. However, because the Prices have not fully explained their reasoning as to why a new trial should be ordered, we decline to further address this portion of their assignment of error. *See* App.R. 16(A)(7); *see also State v. McDonald,* 9th Dist. Medina No. 12CA0093-M, 2013-Ohio-4972, ¶ 32, citing *Cardone v. Cardone,* 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) (stating that it is not the duty of the appellate court to create arguments for the appellant).

**{¶54}** Accordingly, the Prices' first assignment of error is overruled.

### CROSS-APPELLANTS' ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY ENTERING JUDGMENT IN FAVOR OF []
TODD FOLDEN[] ON COUNT THREE OF [THE PRICES'] COMPLAINT
ALLEGING VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES
ACT[.]

**{¶55}** In their second assignment of error, the Prices argue that judgment in favor of Todd Folden on the Prices' CSPA claim is against the manifest weight of the evidence.

**{¶56}** The Supreme Court of Ohio recently clarified that the civil manifest weight of the evidence standard of review mirrors the criminal standard of review. *Eastley*, 2012-Ohio-2179, at ¶ 17. As such, in a civil manifest weight of the evidence challenge, we apply the following standard:

When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." *Ray v. Vansickle*, 9th Dist. Lorain Nos. 97CA006897 and 97CA006907, 1998 WL 716930 (Oct. 14, 1998). "'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." *Id*.

*Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

**{¶57}** "This [C]ourt has held that an employee who makes false and misleading representations in a consumer transaction can be personally liable under [the] CSPA." *Inserra v. J.E.M. Bldg. Corp.*, 9th Dist. Medina No. 2973-M, 2000 WL 1729480, *5 (Nov. 22, 2000), citing *Sovel v. Richardson*, 9th Dist. Summit No. 17150, 1995 WL 678558 (Nov. 15, 1995).

**{¶58}** Here, in support of their weight of the evidence challenge, the Prices point to two letters sent to them in March of 2007, wherein Todd Folden indicated that the home "is complete and ready to move into", and Interrogatory No. 17(G), wherein the jury answered affirmatively that Mr. Folden "took part, specifically directed or cooperated in effectuating KNL's charging [the Prices] in Change Order No. 1 a $521.38 mark up on the cost of I-joists," as evidence that Mr. Folden should be held personally liable for his actions in violation of the CSPA.

**{¶59}** However, even if the jury erred in awarding judgment in favor of Todd Folden on the Prices' CSPA claim after answering Interrogatory 17(G) in the affirmative, this error is harmless in light of our resolution of KNL's second assignment of error; that the CSPA claim

regarding the cost of the I-joists is time-barred by the applicable statute of limitations. Additionally, in the 200 plus interrogatories given to the jury regarding the CSPA, the jury was not asked to determine whether Mr. Folden's March 2007 letters misrepresented the condition of the Prices' home, thus violating the CSPA.

{¶60} As such, based upon our review of the record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Thompkins*, 78 Ohio St.3d at 387.

{¶61} Accordingly, the Prices' second assignment of error is overruled.

III.

{¶62} In sustaining KNL's second assignment of error, and deeming KNL's first and third assignments of error to be moot, and in overruling the Prices' two assignments of error, the judgment of the Summit County Court of Common Pleas is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this decision.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to the Prices.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶63} I dissent from the majority's resolution of the portions of the assignments of error and cross-assignments of error concerning the Prices' CSPA claims. With respect to the remaining issues raised, I concur in the majority's judgment.

{¶64} I cannot conclude that the Prices' CSPA claims were barred by the statute of limitations; and, thus, I disagree that the trial court erred in denying KNL's motion for judgment notwithstanding the verdict on that issue. "JNOV is [only] proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party." (Internal quotations and citations omitted.) *Schottenstein Zox & Dunn Co., L.P.A. v. Reineke,* 9th Dist. Medina No. 10CA01038-M, 2011-Ohio-6201, ¶ 8. "If reasonable minds could reach different conclusions, the motion must be denied." *Id.*

{¶65} In the instant matter the jury was given over 200 interrogatories to complete. Many of them related specifically to the Prices' CSPA claims. However, none of them included

a date of occurrence of the alleged violation. Thus, there is no way to determine with any accuracy precisely when the jury believed any of the violations took place. Moreover, given the standard of review, which requires this Court to consider the evidence in a light most favorable to the Prices and, thus, decide whether the jury *could* have found that a violation occurred after February 2007, I can only conclude that the Prices' claims are not time barred.

{¶66} The interrogatories at issue are worded very broadly and several of them describe the alleged unfair or deceptive act in terms of a *failure* to do something that was required under the contract. For instance, one interrogatory indicates that KNL "failed to install two steel support beams at the foot of the steps in the basement as required by the Contract[.]" With respect to this interrogatory, the jury was not asked whether the unfair or deceptive act occurred solely at the time the wrong support beams were actually installed prior to 2007. Although the act of installing the wrong item or material might have occurred prior to 2007, the jury could have determined that the continued failure to install in accordance with contract was an unfair or deceptive act. Thus, it could have determined that the unfair or deceptive act was not the improper initial installation but, instead, was the ultimate failure to install the proper item in the spring of 2007, after KNL refused to do any additional work under the contract. Accordingly, if that is what the jury found, the violation would not be barred by the statute of limitations. In a similar vein, the jury could have found that said failure occurred at any other point in time between the initial installation and the ultimate failure to remedy the issue. As I believe similar reasoning would apply to several of the CSPA violations that the jury found occurred, I would conclude that the Prices' CSPA claims were not time barred and the trial court did not err in denying KNL's motion for JNOV on that issue.

{¶67} Given the forgoing, I would proceed to address KNL's first assignment of error which contends that the trial court erred in amending certain CSPA interrogatories. Because I agree with KNL that the trial court committed reversible error in amending the interrogatories under the particular circumstances of this case, I would remand the matter for a new trial on the Prices' CSPA claims.

APPEARANCES:

CLARK D. RICE, Attorney at Law, for Appellants/Cross-Appellees.

TODD A. HARPST and KATHERINE S. KNOUFF, Attorneys at Law, for Appellants/Cross-Appellees.

JOSEPH E. OLIVER, Attorney at Law, for Appellees/Cross-Appellants.

WARREN S. GEORGE, Attorney at Law, for Appellees/Cross-Appellants.